FILED LODGED
RECEIVED COPY
NOV 13 2026
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY DEPUTY

JOHN TURSCAK, USMS#14098-074
Central Arizona Florence
Correctional Complex
P.O.Box 6300
Florence, Arizona 85132

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

U nited States of America,

Plaintiff,

vs.

John Turscak,

Defendant.

CR-23=02251-JAS

MOTION REQUESTING THE TRIAL COURT TO ADD INTO AND CLAIRIFY THE ORDER[DOC.150]UPON THE GOV. AUSA'S RESPONSE[DOC.151]
AND
MOTION TO APPOINT A PSYCHIA — TRIST PURSUANT TO 18 U.S.C. SEC.3006A(e)-AND-FED.R.CRIM.P. RULE12.2

It is expected that excludable delay pursuant to Title 18 U.S.C. Sec.3161(h)(I)(D), may occur as a result of these (2) Motions or from an ORDER based thereon.

Comes now the Defendant John Turscak, Movant in a pro se capacity, a simple layman with absolutely no legal training what-so ever, hereby moves the Court respectfully to GRANT the relief he seeks by means of the two-Motions filed in the above captioned and numbered case, attached herein.

///

///

///

## I.
## ARGUMENT

**A. Motion** Re: Doc.150 and Doc.151

First Motion, is a humble request upon the Honorable Court to clarify it's ORDER at Doc.150. Evidently, the AUSA misunderstood or either simply disregarded Defendant's discovery request and the Court's ORDER by failing to address/respond to the four corners of Defendant's Motion,(Doc.149), and by obtaining his medical records. When, the ORDER and his Motion specifically state "psych records", can't get more clearer than that. However, the AUSA was able to provide some but not ALL of his psych records from Medical , beginning in 1999 when Mr.Turscak first fell into Federal custudy from the State of California Dept., of Corrections rather than the year 2005 as the AUSA mistakenly had the Federal Bureau of Prisons ("FBOP") to retrieve those few-50 or so pages- of medical documents,(Doc.150). To best discribe those documents, they are real brief "summaries" from Mr. Turscak's psych-history records that are classifide called PSIQ,SENTRY,BEMR, and,PDS. These are the correct records that the FBOP should have turned over to the Government. Infact, a staff Psychologist employed with the FBOP documents in a report having reviewed and obtained information from these very psych-history records that Mr.Turscak refers to and needs,(See Bates Stamp #3201). Surprisingly,enough Defendant Turscak wishes to turn the attention of the Court to take notice of Bate Stamp #s 2945-2946. They appear to be communications between the AUSA and an FBOP Legal Assistant ("LA"),the date that the AUSA received those medical records that were attached to the Governments Response,(Doc.151), evidently, the

same exact day that the request had been made, August 21, 2026. The response states that if the AUSA needed LA to go back futher than 2023, to simply let LA know and Mr.Turscak's medical records would be pulled with a quickness first thing on Monday-3 days after the AUSA's initial request had been made . That's remarkable the technology that is utilized to retrive documents from Government agencies in this day and age, all done in a matter of a few short minutes. Indeed, this Defendant is at a tremendous disadvantage. Compare that, the Government's Super Speed All Access, to Mr.Turscak's prior defense attorneys, Amy Krauss and Dan Cooper, who couldn't even get ahold of Not One single page from out of his FBOP psych-history records in the entire 7-or so-months that they "both" were "suppose to be" representing this Defendant.Just wanted to throw that bit of unprofessional and completely unexceptable non-work product out there. So, you all can see for your selves what a horrible mess of things prior attorneys have made out of Mr.Turscak's entire defense. On top of all the stress and anxiety that he is going through trying his absolute best efforts to meet thisHonorable Court's firm trial date come February 2027. And, by the way, that was some very impressive work on getting those few psych records from the corrupted "BOP" with their known to falsify inmate records and what not-good job prosicutor. Except, there is a very serious issue that Defendant has with the AUSA "Slow-Footing" on the filing process (e.g.), look at the dates between the emails and the actual filing of the Government's Response was well over 30-days and roughly 10-days after the AUSA had mailed it out to the Defendant. Totaling, 7-wks, when it should have only taken 2 at the most. then, to make

matters even more difficult on the Defendant, "time consuming" wise, the so called Govenment's Response and as mentioned above, isn't even really responsive at all and the records are woefully incomplete. So, only LORD knows how long the AUSA is going to need to take in order to get the Defendant what he needs in order to make his defense and be ready to go,before the Court's dead line. Moreover, these incomplete records-"relevant material evidence"- and, nolonger "vague" to quote the Government,(Doc.146at2), but are clear examples of a very lengthy and troubled history that documents, albeit brifly, the Defendant's sufferings from several different diagnosis of mental illness and bouts w/ suicide.See, Bate Stamp #s: 3226:3231;3201-03;3205-07;3216;3218-20;3225;3236; 3245-46;2991-92;3063;2950-01;2956-57;3042...How in prey-tell did the Government completely overlook all of this substantial evidence for "a reasonable judge" "to experience a genuin doubt respecting the Defendant's competence possibly having a "discernible impact on the proceedings at trial", has left Defendant Turscak scratching his head,"UNBELIEVABLE". See, United States v. Garza, 751 F.3d 1130, 1134 (9th Cir.2014);and, United States v. Neal, 776 F.3d 645,655 (9th Cir.2015), where parenthasis are added, above.Especially,when this Honorable Court takes into serious consideration the fact that even a simple review or a proof-read if you will, through these very Bate Stamped FBOP records mentioned above, of Mr.Turscak's mental health history. How then, does a "reasonable judge" like yourself, Your Honor, let alone a "reasonable person" lets say, like a member of the jury, come to the same "bone head" conclusion, and then, dare to say that "no such evidence" exist to prove that the Defendant has a history of mental

illness or psychological treatment, when ALL of the evidence is looking right at you dead in the eyes. "NO disrespect" but, it is what it is, "the proof is in the pudding" and prosicutors for the Government weren't trying to see none of it-Doc.140-the "truth", and the facts are, that every single FBOP record /disclosure that the Government has provided thusfar,(Doc.151),with the exception of the one and only suspicious document out of the stack of about 50-or so-pages, that the Government relies on to make up all of their completely false, misleading, and inaccurate claims made within their Response (Doc.151),clearly proves that, not only was Mr.Turscak absolute truthful in his Reply,(Doc.149),that raised existing on-going issues with mental health concerning long term solitary confnement being a "trigger"-the connection between his serious mental disease and it -the disease-negatively affecting his ability to properly put on his own defense, but it also proves that, there exist relevant evidence within these FBOP records, to now support all of Defendant's claims as having merit,(e.g.), "yes" Mr.Turscak has an extensive history of mental illness, (See, Bate Stamp #s:3202-03;3220;3291). "Yes" Mr.Turscak has and is currently prescribed psychotropic medication,(See, Bate Stamp #s:3042;3991-92),and, "yes" Nr.Turscak suffers from a very serious mental disease that the AUSA attempts to down play this sickness by reading it off of that (1) misleading FBOP Report calling it a significant history of "substance use" as if it has no relevance to the issue at hand. When, indeed there are good and plenty of Honorable Courts across the nation who would care to differ with the Government's assessment. The Fourth Circuit in particular, details some historical facts with helpful insight, that

best describes this very serious mental disease as follows:

"The tragedy of opioid dependence has led to an extraordinary public health crisis that started at least two decades ago and has accelerated over the past decade. Our Nations jails and prisons have been at the front of grappling with this crisis. See , Criminal Justice Drug Facts,Nat'l Inst.,On Drug Abuse.https//nida.nih-gov/publications/drug-facts/criminal-justice. Studies suggest that sixty five percent or more of incarcerated individuals suffer from moderate to severe substance abuse disorder, including Opioid Use Disorder ("OUD")"'. City of Huntington v. Amerisourse Bergen Drug Corp., 96 F.4th 642,647 (4th Cir.2024);Redonna K. Chandler et al., Treating Drug Abuse and Addiction in the Criminal Justice System: Improving Public Health and Safety, 301 J. AM. MED. ASS'N 183, 189 (2025)("Punishment alone is a futile and ineffective response to drug abuse, failing as a public safety intervention for offenders whose criminal behavior is directly related to drug use"). See also, United States v. Janczewski, 560 F.Supp.3d 1064, where the Honorable Court for the Eastern District of Michigan provides an insightful opinion on the truth of the matter,quoting in pertinent part:"Indeed, despite significant evidence that incarceration is an ineffective means of combatting drug abuse,the federal criminal punishment system continues to treat addiction and its consequences as moral failures that can be deterred through sanction, rather than issues of public health.

To be sure,the Defendant was not sent to prison for using drugs, but his incarceration, like that of many others, was a direct and predictable consequence of addiction... Making matters worse, people whose crimes were fueled by addiction have had even less

access to rehabilitation programs, including drug treatment, than normal. Drugs, on the other hand, have remained readily available, despite severe limitations on outside access to BOP facilities. And even though the First Step Act directed the BOP to expand access to Medication Assisted Treatment ("MAT") for people addicted to opioids, only 268 people-less than two percent of the more than 15,000 the BOP estimates are eligible-are currently enrolled in the MAT Program. Defendant Janczewski is not one of them"...And neither is Defendant Turscak, despite a well-documented medical history of long-term addiction problems, and a current severe OUD diagnosis. Which, according to the World Health Organization, the National Institute On Drug Abuse, Substance Abuse and Mental Health Services Administration, Centers for Disease Control and Prevention, and the American Medical Association, describe "OUD" as a progressive "brain - disease" marked by symtoms of unprovoked irritability with periods of violence, suicidal ideation, depressed mood, difficulty in adapting to work like setting, impaired judgment, anxiety, occupational and social impairment with occassional decrease in work efficiency and intermitted periods of inability to preform occupational tasks, difficulty in establishing and maintaining work and social relationships, impaired impulse control and cronic sleep impairment. To be certain, Defendant Turscak has, and is currently undergoing symtoms relating to almost all of thee above. Including, psychotic depression, disorganized thinking, deficits in sustaining attention and concentration, impaired expressive abilities and anxiety.These are some of the mental limitations that are currently interfering with the

Defendant's ability to present his own defense.For which given the complexities of mounting a legal defense at trial, the Supreme Court has ruled that Judges are to consider a defendant's technical knowledge as well as potential mental limitations such as those listed above, in determining wheather a defendant has the capacity to represent himself without assitance of counsel. See, Edwards, 554 U.S. at 173,176.

B. The Court's Order Should Extend To Include Disclosure Of Mr.Turscak's Medical And Psych Records From CoreCivic-CAFCC

Defendant-Movant Turscak request , the Court's Order,(Doc.150) Re: Motion to Compel Discovery,(Doc.149 at 4), that the Court extend or issue anew ORDER , to include requiring the Government to also obtain/disclose ALL of his medical and psych-records from CoreCivic-CAFCC. Where Defendant-Detainee has and remains on "lock-down" status inside MAIN-RHU's Psychiatric Housing Unit under USMS custody, since Dec.2023 to Oct.2026.

Defendant Turscak argues that this specific discovery-medical and psych records from CoreCivic-are material needed to show that substantial evidence does infact exist to make a clear connection between Defendant's mental disease and the negative impact it is having on his ability to make his own defense in compliance with United States v. Telles, 18 F.4th 290,300(9th Cir.2021), and, under United States v. Garza, 751 F.3d 1130,1137(9th Cir.2014). Moreover, like the FBOP records, the CoreCivic records will also contain additional evidence relevant to the Defendant's mental health, the current prescribed psychotropic medication he's been taking , the symtoms he's suffering from, and how his mental, as well as his physical health have been deteriorating (e.g.), the

"examples" that the government has claimed was "lacking".(Doc.146 at2-3).But, then again, didn't the AUSA make similar claims about Defendant's FBOP records that "apparently" were in the governmen-t's possession for quite some time, to be concluding that, these same exact FBOP records-"substantial evidence" that is now before the Court-"some how" prove that the Defendant has "sustained psy-chological stability", never has been prescribed any psychotropic medication",and, does not appear from the BOP's records that the Defendant has a "sustained history of 'mental illness' or psych-ological treatment'".(Doc.146 at 3). The government simply makes up these claims without providing any proof or evidence in the form of Exibits and FBOP employee Declarations. (Doc.140 at 2-3). When, and as explained in more detail above,there is overwhelming evidence, approximately 50 or so,government provided, discovery pages to these same FBOP records that clearly prove the govern-ment's claims to be false. And, so will the CoreCivic records. Thus, the urgent need for the government to produce all of the Defendant's medical and psych records immediately. As evidence of incompetence can include, the defendant's mental health hist-ory records, and, or,the defendant's capability to carry out the basic tasks needed to present his own defense without the help of counsel.United States v. Neal, 776 F.3d 645,655(9th Cir.2015).

1. The government is mistaken in stating that their Office can not subpoena Defendant's CDOC psych records.(Doc.151). Simply because the "Act" that it refers to, does not pertain to his-Mr.Turscak's psych-history records, only "medical" records are protected under the Act.While on the subject, Defendant would like to suggest that, the AUSA reach out to his prior defense attorneys because he did infact sign release forms for this very purpose.(Doc.151 at 2).

///

///

So it's clear for the record, Defendant concedes that at the time of filing his initial Motion,(Doc.140), including his Reply, (Doc.149),he did not have the requiered evidence under relevant case law to support his claims. All Defendant could do at that time, within his Reply was to argue against what the government was aleging in theie Response,(Doc.146 at 2-3), and,counter the misleading and inaccurate evidence that the AUSA was claiming to have,(Doc.140 at 3-4),yet failed to provide. This is precisely why Defendant had repeatedly requested that an Evidentiary Hearig be conducted on the merits of his claim that, "substantial evidence" exist within those FBOP records sufficient to create a "reasonable doubt" as to Defendant Turscak's competence to properly conduct "trial proceedings" (huge differance) on his own as is his right to do so under **Faretta**. Edwards, 554 U.S,at 171;176. (Doc.149 at 4 and 6).Defendant does not understand at all why his request was completely ignored. thinking, perhaps he didn't present his arguement correctly. However, Courts have a duty to ensure that **pro se** defendants do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements. See, Hamilton v. United States, 67 F.3d 761,764(9th Cir.1995); Balistreri v. Pacifica Police Dept.,901 F.2d 696,699(9th Cir.1990). See also, Allen v. Calderon, 408 F.3d 1150,1152(9th Cir.2005)(ruling that **pro se** status informs and colors the lens through which the court views the filings, and, whether these filings made sufficent allegations of dilligence). Defendant Turscak strongly believes that in his Reply, he had indeed made sufficient allegations of diligence to harbor a genuine doubt as to his competency that should have afforded him the

benifit of any doubt for the simple fact, that everything the Defendant had alleged were in those FBOP records-"substantial evidence"-it's all there, and it should have been considered. United States v. Garza, 751 F.3d 1130,1134(9th Cir.2014).

Based on the Court's Orders,(Doc.148 and Doc.150) denying Both Defendant Turscak's Motion,(Doc.140),and Reply,(Doc.149), the Defendant is utterly confused with the Court's analysis and conclusion. However, if it means what Defendant thinks it means, then, this scenario could very well play out in his favor, as it should, and here's why. On the one side of the scales of justice, you have where the Court has reason to believe that the Defendant is quite capable of presenting his own defense without the help of counsel, and infact applauds Defendant on a job well done. (Doc.148 at 6).This observatiom was based off of a few simple Motions he's since had filed, that in Defendant's own personal opion, his 10-yr old grand daughter Victoria could have easily knocked-out in a mattrt of minutes, "no-sweat" for an Honor Roll Straight A+ Student and 4th Grade Spelling Bee Champion of L.A., County Unifide School Dist.,C.A.How aboul them apples?.

Point being, the Court should refrain from giving the Defendant any "pats on the back" for completing a few simple pre-trial motions that cite relevant case law, and for being very familiar with the Sentencing Guidelines,(Doc.148 at 6), that, have absolutely "zilch" to do with a pro se defendant representing himself at trial. Rather, the trial Court should be moe concerned with the Defendant being able to fully understand the trial proceedings before him, and, that he is actively carrying out the basic task needed to present his defense at trial (e.g.),jury selction;

instuctions, voir dire, prepairing trial binders, admissible evidence, exhibits, expert witnesses, stipulated deposition, opening and closing arguments, et cetera., et cetera., all without the help of counsel. Thompson, 587 F.3d at 1172(quoting Edwards, 554 U.S. at 175-76). Because, as a result of the Defendant's mental disease he suffers from, he actually may become so overwhelmed with the entire trial proceedings ordeal. That,it is very much possible he will have an absolute nerves brake down to where he will no longer be able to make his own defense and, will require emergency medical attention/treatment from an outside hospital. See, Title 18, United States Code, Section 4241(a)(emphasis placed on "or" to enable him to make his own defense"'. ;United States v. Audette, 923 F.3d 1227, 1237(9th Cir.2019). As the Court is correct to recognize that;"[m]ental illness itself is not a unitary concept. It varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways."(Doc.148 at 7.) That is so true.

Then, to top it all off, on the other side of these unbalanced scales you have, where right after acknowledging Defendant's skills to carry the day at trial. The Court turns right around in an apparent contradictious decision and "ORDERS" current advisory counsel, Nicholas Brereton, as newlt appointed "standby" counsel to "assist" or "replace" Defendant in the "event" the Court "determines" that Defendant can "no longer" be permitted to "proceed" pro se.(Doc.148 at 7.) And, there you have it-in "black and white"-clear and convincing evidence of a reasonable judge  expressing a reasonable doubt respecting the Defendant's competence-there existing the strong possibility that the Defen-

dant may no longer be permitted to prepare his defense without the assistance of counsel. Neal, 776 F.3d at 655. "Therefore, Mr. Brereton should be prepared for the possibility of taking over representation in advance of, or during, trial",(Doc.148 at 8.)-constituting a "discernable impact on the proceedings" sufficient to warrant an ORDER for the Defendant to submit to a psychiatric examination in accordance with Title 18, United States Code, Section 4241(a),and, pursuant to the provisions of Section 4247(b) and (c) respectfully.

C. Motion to Appoint a Psychiatrist

Defendant Turscak now Motions this Honorable Court for an ORDER to appoint a Psychiatrist pursuat to Title 18 U.S.C. Section 3006 A (e) and Rule 12.2 Fed.R.Crim.P. Mr.Turscak respectfully makes this urgent request,(MUST BE DONE WITHIN NEXT 30-DAYS DUE TO TRIAL TIME CONSTRAINTS), based on a State-of-Mind defense.He argues that, his actions both prior and subsequent to the indictment period may be probative of the Defendant's "state of mind". See, United States v. Veorhies, 658 F.2d 710,715(9th Cir.1981)(e.g., United States v. Barry, 814 F2d, 1400,1403 n.6(9th Cir.1987)(quoting from Ayers, 924 F.2d at 1473)).Specifically, Defendant Turscak seeks to make an issue of his mental condition/OUD-excessive drug use at the time of the alleged offenses, and present Expert testimony on the issue defense of compulsion. See, Model Penal Code Section 4.01 (2) American Law Institute Test. Defendant asserts that he was under a delusional state of mind, in that the actual act itself-prison styled stabbing assault-was indeed justifide and committed out of necessity in the interest of National Security-the general welfare.For which, there is

a preponderance of the evidence that exist within the governments disclosure,(item #s:000067 and 000065-Recordings of Mr.Turscak's debriefings and full cooperation with the FBI), to fully support the fact that all of the things the Defendant seeks to prove are probably true than not true to meet all the elements of such a defense, construed most favorably to the Defendant. See, United States v. Contento-Pachon, 723 F.2d 691, 695(9th Cir.1984). See also, United States v. Twine, 853 F.2d 676,679(9th Cir.1988)( holding Psychiatric evidence that goes beyond a defendant's cognitive defects is admissible to negate specific intent)(Pope v. Zenon, 69F.3d at 1018)(defense of diminished capacity caused by drug use is an appropriate state-of-mind defense designed to reduce the defendant's culpability to something less than...)), in this case, attempted murder. As such,Defendant Turscak is in serious need of a Psychiatrist to provide Expert testimony about the negative effects of his mental disease and the toll it takes on his psyche as a whole. For which drug use played a major factor into Defendant's delusional state of mind and a Psychiatrist can no doubt form an Expert opinion of the Defendant's mental state at and before the time of the alleged crimes that, could also very well negate specific intent. Thus, Expert testimony on the Defendant's state of mind would be a very significant factor in the trial proceeding that would make it extremely critical, if not of the utmost importance towards his ability to present his own defense and disprove material facts at issue. See, Williams v. Calderon, 52 F.3d 1465, 1473-74(9th Cir.1995), quoting Ake v. Oklahoma, 47 U.S. at 74, Cert. denied. See also, Wade v. United States, 426 F.2d 64 (9th Cir.1970)(Model Penal

Code Section 4.03(1)(Mental disease or defect is an Affirmative Defense.)) This is why it is extremely important thar the government fully discloses all of the psych-history record from the FBOP and CoreCivic, that the Defendant argues are material to his defense required by Brady,(Fed.R.Crim.P. 16),and must be obtained prior to trial because a juror may conclude that the Defendant's state-of-mind at the time of the offense could not or did not have the requisite intent to commit murder muchless attempted murder. See, Braxton v. United States, 500 U.S. 344, 111 S.Ct.18 54,114 L.Ed.2d 383(1991).

D. Declaration of Mr. Turscak, Pro se Defendant.

I, Defendant, John Turscak acting in a pro se capacity, hereby declare under the penalty of perjury that, every single word expressed, intended, and meant herein the aforegoing Motions are non frivolous, are very much true, factual, and fully supported with substantial evidence, to the best of my knowledge and understanding of the law as a simple layman and as that term is defined in Zinco v. Idaho, 247 F.3d 1015, 1020 (9th Cir.2001).

I further declare that, I have included with this Declaration attachments discribed as Defendant's Exhibits-AG and BH.

Exhibit-AG, is a report from the Department of Justice ("DOJ's") Inspector General that put the spot light on several investigations into the Federal Bureau of Prisons-("FBOP"), their agencies long and running history of corruption, cover-ups, scandals and outright lies. Criminal activity that the USAO for the ND.Cal., described as "a betrayal of public trust". Now, think about that for a moment.... The largest Law Enforcement Agency in America

the Federal Bureau of Prisons, who is responsible for hiring thousands of gangsters and their goon squads,(and, apparently "perverts" according to the report), to reign terror and corruption upon the very prisoners they're suppose to be protecting. Their failure to do so by conspiring to create such violent and deadly incidents to report. Has caused an extreemly toxic culture one that is "deeply rooted" and liable for contaminating the entire justice system. But, that's just my opinion after witnessing 27-yrs of inmate assaults, sexual abuse, planting controband in inmate cells, alcohol, tobacco, cell phones, and drug trafficing into the prisons, including other criminal conduct committed by corrupted FBOP staff-the real gangsters and their goon squads-NGIC and SIS. Interesting enough, and so to give the Honorable Court an idea,if you will, of what exactly I'm referring to with regards to my attachments. There is a particular investigation I would like to draw attention to because of its starking resemblance to my case and specifically to my medical records that the AUSA claimed to have obtained from the FBOP and in which the government had used as a basis to get the Court to deny my Motion for a psych-evaluation, is the preventable bludgeoning death of celebrity ex-crime boss and ex-FBI informant James "Whitey" Bulger within 12-hrs of his arrival at the very violent and deadly Max-Security United States Penitentiary-("USP-Hazelton")-in Hazelton, VA. Where a DOJ Investigation uncovered staff corruption and falsefying government documents that showed evidence of how FBOP Officials had approved downgrading Mr.Bulgers "Medical-Mental Health Care Level" (like they did to me according to prosicutors), under the guise of getting FBOP's "Central Office" in Washington,

D.C.,to sign off on transfering him from a Protective Custody/Non-Active Gang Drop Out Yard at the United States Penitentiary-("USP-Coleman II"), in Coleman, FL., to a fully Active Gang Affil-liated and Drug Infested Yard, "USP-Hazelton" that houses Mexican Mafia Shot Callers,Aryan Brotherhood-prison gang leaders, and Hundreds of their Foot Soldiers where "unfortunately" Mr.Bulger died a herendous death-a vicious exicution styled beating. It was reported that, over 100-staff members inside the FBOP knew that Mr.Bulger was "dead-meat" as soon as he stepped foot onto the Devil's play ground at USP-Hazelton, and they did absolutely nothing to stop his transfer nor to prevent his murder. The FBOP set the whole thing up for Mr.Bulger to be beaten to death, accor-ding to the I.G's Investigative Report. "Cold blooded".

Now, my purpose for entering this Report into evidence before the Court, is to show how the corrupted FBOP has a vicious rep.,for having "priors" for falsefying inmate reports, and having P.C., inmates transfered to "Active" Gang Yards for the purpose of having them seriously assaulted, raped and even murdered. Simply because SIS doesn't like you. Moreover, there are also several similarities with Whitey Bulgers murder case and Stranger Turscaks stabbing assault case that, I'd very much like to point out as follows: Once upon a time , Whitey and I were very young and powerful Crime Bosses-"Gang Lords" who the Government had taken a "special interest" in, and which would eventually lead to him and I becoming under cover FBI -Cooperating Witnesses ("CW-#1")- my patriotic duty-,Whitey and I also assisted the FBOP's NGIC and SIS,(we had to if we wanted to remain on their P.C. Drop-Yards), according to BOP Program Statement 1380.03;"Once a Gang Leader-

always a Gang leader", doesn't matter if we dropped out/cooperated w/Gov.,or not., but the most important comparasonof them all, is that our Medical-Mental Health Care Levels were infact manipulated by NGIC, which is "Central Office" to transfer Whitey, including myself, to the prisons they wanted him and I to be housed at,(e.g) evidence clearly show that I had been excepted by Mental Health Services at FCI-Fairton, NJ., to be transfered to a trama treatment facility called the RESOLVE Program, I was designated to FCI-Danburry, CT., I was on my way in route, but as soon as I get to the Transfer Center in Ok., staff inform me that there's been a sudden change and "Central Office" has redesignated me to FCI-Tucson. Where my Care Level II Mental Health mysteriously gets downgraded and my life time adult and childhood trama just somehow magically disappears and its reported that now all of a sudden I have a clean bill of mental health or better said by the AUSA; "sustained psychological stability" with absolutely no history of any mental health issues to report at this time.'' Well,Praise the LORD, Iv'e been completely heald according to information that was provided to the government by some legal assistant who isn't even an official FBOP staff member. None of this makes any sense at all. The government simply made up these claims without having to produce one shred of evidence in the form of official FBOP staff Declarations and Exibits verifying from where and whom provided such and such information concerning my mental health history records. When the 50-or-so discovery pages that the government has provided me with thusfar, all disprove s every thing that the government had claimed in their Response to be true. I don't understand how thr government was allowed to get away

with providing the Court with false , misleading and inaccurate information about my mental health-history records and made me out to be a liar who was trying to scam the system and intentionally delay these proceedings like all of my prior defence attorneys are guilty of doing, and of using the same b.s excuse to withdrawl as counsel for "professional considerations" I don't even know what that means ,Your Honor, but if your trying to point the finger at the culprit , or I should say culprits responsible for diliberatly delaying these proceedings just ask to take a look at all of my prior defense attorneys work product on my case to account for aLl of those hundreds and thousands of dollars they made, and that'll tell you everything you need to know. The"proof is in the pudding" that's my motto. Which, by the way, not one of those attorneys have since complied with the Court's ORDER,(Doc.145 at2).Stand by counsel has not received any of the requested work product items that were detailed in my Motions,(Doc.138;Doc.142),.And, that will conclude my Declaration before this Honorable Court. I thank you for your time and consideration of the facts and evidence.

Respectfully submitted on this 12th day of October 2026.

/s/
John Turscak,Defendant.